IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| RUFUS KENYON MOREHEAD, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Case No. 4:10CV01260 AGF |
| DAVE DORMIRE, | ) | |
| Respondent. | ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on the petition of Missouri state prisoner Rufus Kenyon Morehead for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury of two counts of statutory sodomy with a child under the age of 12. The trial court found Petitioner to be a prior offender, and sentenced him to two concurrent terms of 20 years' imprisonment. For habeas relief, Petitioner claims that he received constitutionally ineffective assistance of counsel in that appointed counsel (1) had a conflict of interest and antagonistic relationship with him because he had tried to have her removed from the case, and the District Public Defender denied Petitioner's removal request because the District Public Defender and defense counsel were involved in illegal activities at the time; (2) failed to investigate, subpoena, and call the four witnesses Petitioner had asked her to call; and (3) failed to point out to the trial court that the victim did not identify Petitioner when asked at trial if she saw him in the courtroom, and failed to make objections he asked her to make. Petitioner also claims that post-conviction counsel was ineffective in connection with the filing of Petitioner's amended motion for

post-conviction relief. For the reasons set forth below, federal habeas relief shall be denied.

## BACKGROUND

An indictment was filed against Petitioner on May 3, 2005, and a public defender entered his appearance for Petitioner on that day. The public defender filed requests for discovery and a motion to reduce bond. On May 12, 2005, another public defender entered his appearance, and filed a motion for change of judge, that was granted, and an endorsement of witnesses. On November 7, 2005, a third public defender entered an appearance, and on November 23, 2005, a fourth public defender entered her appearance. On June 29, 2006, trial was set for August 7, 2006.

On July 17, 2006, Petitioner wrote to the District Public Defender that a conflict of interest had developed between him and his current counsel, that she had not done anything on the case, had not contacted any of his witnesses, was rude to him, and hung up on him during phone conversations. He asked that the entire office recuse itself from the case and that the judge appoint a "Special Defender from another office." (Doc. No. 1-1 at 7.) The record reflects that on July 19, 2006, Petitioner also sent a letter to the trial judge complaining about his counsel. The District Public Defender responded by letter dated July 24, 2006, that Petitioner's current counsel was an experienced criminal lawyer and that he was not going to assign yet another lawyer to the case. On the day before the trial began, defense counsel filed motions to suppress identification evidence and to suppress evidence. Both motions were denied. On the day of trial, defense counsel filed a memorandum in which Petitioner admitted to being a prior offender, and a motion to

preclude the hearsay statements of the victim to law enforcement officers. The motion was denied.

Five witnesses testified at trial. The victim, her mother, the doctor who examined the victim the day after the crimes, and a police officer who interviewed the victim, testified for the state; Petitioner testified on his own behalf. The Missouri Court of Appeals summarized the evidence at trial as follows. The Court's review of the trial transcript confirms that this summary is accurate.

> Viewed in the light most favorable to the verdicts, the evidence is as follows. In late February 2005, Defendant lived with Dana M. ("Mother") and her children, including T.M., who was seven years old at that time. Defendant had an intimate relationship with mother. On February 24, 2005, Defendant watched Mother's children for her while she was at work. The following morning, while Mother was combing T.M.'s hair, T.M. told her that Defendant had put his penis in her anus. Mother sent T.M. to school, and later that day Mother and her sister took T.M. to the hospital for examination. Dr. Ricci, who examined T.M., found that T.M.'s hymen was inflamed and lacerated, and that her vagina had abrasions, which were consistent with the insertion of a finger. Dr. Ricci also found that T.M. had a tear in her rectum, consistent with the insertion of a penis. These injuries took place within twenty-four hours of the examination on February 25, 2005.

(Resp. Ex. E.)

To the above, the Court adds that the victim's mother testified that when she picked the victim up from school the day after the crimes, she observed the victim sitting on a pillow and the victim told her it was because her bottom hurt. When T.M. was on the stand, she was asked if she saw the perpetrator, whom she called Kenyon, in the courtroom. She was allowed to leave the witness box and walk around the courtroom. Petitioner was seated at the defense table, but T.M. said she did not see Kenyon in the room. T.M. then testified that Kenyon committed the charged crimes. (Resp. Ex. D at 172-74.) Petitioner

3

testified that he never molested or touched the victim. He testified that before the accusations, the victim's mother's ex-boyfriend wanted to move back in with the victim's mother. Petitioner believed that in light of this, his relationship with the victim's mother caused a problem for her, and that this led to the accusations.

Defense counsel filed motions for judgment of acquittal at the close of the state's evidence and at the close of all the evidence. Both motions were denied. As noted above, the jury found Petitioner guilty of both counts, and the motion for acquittal notwithstanding the verdict filed by defense counsel was denied.

**Direct Appeal and State Postconviction Proceedings**

The only issue raised on direct appeal related to the State's closing argument. The Missouri Court of Appeals rejected this claim and affirmed the judgment and sentences. After Petitioner filed a pro se motion for state postconviction relief, counsel was appointed and given an opportunity to file an amended motion. In an amended motion, Petitioner asserted that defense counsel was ineffective and uncommunicative due to a conflict of interest with Petitioner. He asserted that defense counsel was rude to him, had minimal contact with him, hung up on him during phone conversations, was unprepared, and did not call as witnesses Thomas Mooney and the victim's teacher,[1] both of whom Petitioner asked her to call. According to Petitioner, Mooney would have corroborated Petitioner's testimony that the victim's mother made up the allegations in order to get Petitioner out of the house before her ex-boyfriend came back to stay with her.

---

1  In his pro se motion for postconviction relief, Petitioner identified two additional witnesses he had asked defense counsel to call; he did not explain how these witnesses would have helped his case.

4

Petitioner also asserted that his constitutional rights were violated by being forced to go to trial without his counsel of choice. He stated that he would testify at an evidentiary hearing that he wanted to retain a certain private criminal lawyer and that two other witnesses would testify that they had the means and were willing to do that for Petitioner. Petitioner would further testify that he told defense counsel this but counsel failed to notify the court, such that a continuance to enable him to retain private counsel was not requested. (Resp. Ex. H at 30-36.)

Petitioner next claimed that defense counsel was ineffective for failing to call Mooney as a witness. According to Petitioner, Mooney would have testified that the victim's mother told him about her ex-boyfriend coming home and Petitioner having to leave, and that this would have corroborated Petitioner's theory that the victim's mother fabricated the allegations of sexual abuse to get rid of Petitioner before her ex-boyfriend returned to live with her.

The state court denied the postconviction motion without an evidentiary hearing. The court found that Petitioner's first claim was without merit because Petitioner did "not allege factually how his defense was prejudiced by the claimed lack of contact with trial counsel and [Petitioner] does not allege how the taking of the depositions of Tommy Mooney and the victim's elementary school teacher would have affected the outcome of his trial." The Court further noted that there was no reason to assume that trial counsel did not have available materials from the other public defenders who had represented Petitioner in the case before her.

In rejecting the counsel-of-choice claim, the state trial court noted that the letter of July 19, 2006, made no mention of Petitioner's ability or attempt to retain private counsel. Lastly, the state court concluded that Petitioner's claim of ineffective assistance of counsel for failing to call Mooney as a witness was without merit because Mooney's purported testimony would have been inadmissible as hearsay, and speculation on his part as to why the victim's mother fabricated the allegations against Petitioner.

The Missouri Court of Appeals affirmed the denial of post-conviction relief, concluding that the motion court's findings and conclusions were not erroneous. The appellate court stated that Petitioner's first claim consisted of conclusory allegations of both the existence of a conflict of interest with counsel and of prejudice. The appellate court stated that Petitioner's claim that counsel was ineffective in failing to ask for a continuance so that Petitioner could hire private counsel failed for several reasons: Petitioner did not plead facts demonstrating that a motion for a continuance would have been granted or that the rejection of such a motion would have been reversible error; he failed to allege facts demonstrating a total breakdown in communications with defense counsel; he failed to allege that he had in fact obtained private counsel; he did not raise his desire and efforts to obtain private counsel in a timely manner to the trial court; and he failed to demonstrate prejudice, i.e., that the result of the trial would have been different had counsel filed a motion for a continuance.

The Missouri Court of Appeals agreed with the trial court that the claim of ineffective assistance of counsel for failing to call Mooney failed because Mooney's purported testimony would have been inadmissible hearsay and speculation. The

appellate court stated that in any event, in light of the evidence of guilt, in particular the medical evidence, Petitioner could not establish prejudice by showing a reasonable probability of a different outcome had Mooney testified.

**Federal Habeas Petition**

Petitioner raises the claims he raised in his amended state postconviction motion. In connection with the conflict-of-interest claim, he adds the allegation that the reason his request for a special public defender was denied was because the District Public Defender and defense counsel were involved in illegal activity at the time, and he submits newspaper articles describing such involvement in an immigration marriage fraud ring. In connection with the ineffective assistance of counsel claims he adds the fact that counsel did not "point out" to the trial court that the victim did not identify Petitioner in the courtroom, and that counsel did not call the four witnesses, including Mooney and the victim's teacher, whom he had identified in his pro se motion for postconviction relief.

Respondent argues that habeas relief must be denied with respect to these new aspects of Petitioner's claims because they were not raised in state court and are thus procedurally defaulted. Respondent argues that the state courts' adjudication of the remaining claims was legally and factually reasonable, precluding federal habeas relief on those claims.[2]

---

2   In his traverse, Petitioner for the first time asserts that the indictment did not properly charge him with being a prior offender. A Traverse is not the proper pleading to raise additional grounds for habeas relief. *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994).

7

# DISCUSSION

**Procedural Default**

As Respondent argues, "[o]rdinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *See Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (citation omitted). A state prisoner who defaults on his federal claims in state court is generally barred from federal habeas relief unless the prisoner can show cause for the default and prejudice resulting therefrom, or

> [w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012). Here Petitioner procedurally defaulted the claims that defense counsel was not removed because she was involved with the District Public Defender in illegal activities, that defense counsel was ineffective for failing to call as witnesses individuals other than Mooney and the victim's teacher,[3] and that defense counsel was ineffective in failing to point out to the trial court that the victim did not identify him in the courtroom. Petitioner has made no showing of cause or prejudice for his procedural default, or that postconviction counsel was ineffective, and so this Court will turn to the merits of the claims that Petitioner properly preserved for habeas review.

---

3  Upon the filing of the timely amended postconviction motion, any claims in the initial pro se motion for postconviction relief were no longer before the motion court except to the extent they were included in the amended motion. *See Crawford Times v. Steele*, No. 4:07cv1981 TCM, 2011 WL 1260063, at *6 (E.D. Mo. March 31, 2011).

8

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "AEDPA effected a move toward greater deference in the § 2254 courts' review of state-court decisions." *Brown v. Leubbers*, 371 F.3d 458, 460 (8th Cir. 2004) (en banc). "[A] federal habeas court may overturn a state court's application of federal law only if it so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Nevada v. Jackson*, 133 S.Ct. 1990, 1992 (2013) (citation omitted).

> The factual findings of the state court also may be challenged in a § 2254 petition, but they are subject to an even more deferential review. Relief may be granted if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Factual findings by the state court "shall be presumed to be correct," a presumption that will be rebutted only by "clear and convincing evidence." *Id.* § 2254(e)(1).

*Kinder v. Bowersox*, 272 F.3d 532, 538 (8th Cir. 2001).

**Ineffective Assistance of Counsel Claims**

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must not only show that counsel's performance was deficient, but must also show that he was prejudiced

9

by his counsel's incompetence. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To satisfy the prejudice prong, a petitioner must show "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . [A] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Kennedy v. Kemna*, 666 F.3d 472, 477 (8th Cir.) (quoting *Strickland*, 466 U.S. at 694), *cert. denied*, 133 S.Ct. 611 (2012). "[W]hen a petitioner fails to demonstrate sufficient prejudice from the alleged ineffectiveness, the court need not analyze the performance component." *Carter v. Armontrout*, 929 F.2d 1294, 1298 (8th Cir. 1991).

"Decisions relating to witness selection are normally left to counsel's judgment and 'this judgment [should not] be second guessed by hindsight.'" *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990). "However, so-called 'strategic choices' by counsel based on incomplete investigation are not entitled to deference." *Lyons v. Luebbers*, 403 F.3d 585, 594 (8th Cir. 2005); *see also Nielsen v. Hopkins,* 58 F.3d 1331, 1336 (8th Cir. 1995) (explaining that the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistances inappropriate if counsel's strategic decisions are made after an inadequate investigation). A habeas petitioner claiming that counsel was ineffective for failing to call a certain witness, must show that had the individual testified, his testimony "would have probably changed the outcome of the trial." *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1996).

Here, the Missouri Court of Appeals held that Mooney's potential testimony would have been inadmissible hearsay and speculation, and that even if defense counsel was deficient in not calling him, the record fails to create a reasonable probability that Mooney's testimony

would have altered the outcome of Petitioner's trial. As noted above, this Court's question under § 2254(d) is not whether it believes "the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Kennedy*, 666 F.3d at 477. Upon review of the trial transcript, this Court concludes that the state courts' determination that Petitioner failed to show prejudice was not contrary to or an unreasonable application of federal law. *See, e.g., Cochran v. Dormire*, 701 F.3d 865, 870 (8th Cir. 2012). Testimony by Mooney that the victim's mother told him she had a problem with Petitioner being in her house now that her ex-boyfriend wanted to come back, and Mooney's opinion that she therefor fabricated the accusations against Petitioner, would likely not have been admissible. And even if it were, it was not unreasonable for the state courts to determine that this testimony, given the evidence of guilt, would not have changed the outcome of the trial. *See, e.g., Hanes v. Dormire*, 240 F.3d 694, 699 (8th Cir. 2001) (denying federal habeas relief where even if defense counsel's decision not to call witnesses was deficient, there was no reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

With respect to counsel's failure to call the victim's teacher, Petitioner has not described what the teacher's testimony would have been or how it would have likely changed the result of the trial. Thus this aspect of Petitioner's claim fails.

Petitioner's overarching claim of ineffective assistance – that counsel had a conflict of interest with Petitioner and thus did not prepare for or perform adequately during trial – also fails. Petitioner does not raise a conflict-of-interest claim based upon defense counsel's joint representation of more than one defendant. Rather his claim is that there was a breakdown in

11

communication with defense counsel, with the result that counsel provided constitutionally inadequate representation. Such a claim is governed by the two-part *Strickland* standard. *Simmons v. Steele*, No. 4:08–CV–1989 (CEJ), 2012 WL 718629, at *6 (E.D. Mo. March 6, 2012) (citing *United States v. Young*, 315 F.3d 911, 914 n.5 (8th Cir. 2003)). This Court's conclusion above that the state appellate court's determination that Petitioner failed to satisfy the prejudice step of *Strickland* with respect to the ways he claimed defense counsel was ineffective due to the alleged conflict of interest, applies here too.

**Right to Counsel of Choice**

Petitioner's preserved claims implicate his right to go to trial with counsel of his choosing. "[A]n accused who is financially able to retain counsel of his own choosing must not be deprived of a reasonable opportunity to do so." *United States v. Gonzalez-Lopez*, 399 F.3d 924, 929 (8th Cir. 2005). However, "[t]he right to retain counsel of one's choice is not absolute. . . . The right to choice of counsel must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice." *Id.*; *see also Williams v. Nix*, 751 F.2d 956, 959 (8th Cir. 1985); *Urquhart v. Lockhart*, 726 F.2d 1316, 1319 (8th Cir. 1984).

As noted above, the state appellate court stated that Petitioner did not tell the Court in a timely manner that he wanted, and had the resources, to hire private counsel. Petitioner does not dispute this. Rather Petitioner argues that he told this to defense counsel and that she was ineffective in not asking for a continuance so that Petitioner could obtain private counsel. Under the circumstances of this case, the Court cannot say that the state appellate court's adjudication of this claim was unreasonable or a misapplication of

federal law. As the state court reasoned, it would not have been reversible error had the court denied a motion for a continuance even if one were made. *See Urquhart*, 726 F.2d at 240 (holding that the state trial court did not violate a criminal defendant's Sixth Amendment right to counsel in not granting a motion for a continuance, made on the day of trial, to enable him to retain private counsel, where he alleged that he told appointed counsel three weeks earlier that he wished to do so).

**Ineffective Assistance of Postconviction Counsel**

As Respondent argues, this claim fails because criminal defendants do not have a federal constitutional right to counsel in state postconviction proceedings. *See Coleman v. Thompson*, 501 U.S. 722, 757 (1991) (holding that there is no cognizable habeas claim for ineffective assistance of postconviction counsel because no constitutional right to counsel exists in postconviction proceedings); *Cornell v. Nix*, 976 F.2d 376, 381 (8th Cir. 1992) (same); *Battle v. Roper*, No. 4:06CV104–DJS, 2009 WL 799604, at *14 (E.D. Mo. March 24, 2009) (same).

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of Petitioner's claims for habeas relief debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2253(c). *See Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (standard for issuing a Certificate of Appealability) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Rufus Kenyon Morehead for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not be issued in this case.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of August, 2013.